The opinion of the court was delivered by
Huston, J.
To the decisions of the court, at the trial of this cause, several bills of exception were taken, and in this court errors were assigned up to the number of nine.
The first error here is to the declaration of the plaintiff John Moreland, the plaintiff below, had been the owner of a bond oa *62 Craighead. This he assigned to James Morrison, the defendant below. The bond was for eight hundred dollars, conditioned to pay four hundred dollars. The parties would seem to have placed great confidence in each other, or to have been unacquainted with the forms of business; for Morrison, when he received the bond with the assignment, barely engaged to pay Moreland four hundred dollars for it, but gave no memorandum to evidence that he had received it, or that he was to pay any thing for it. The statement or declaration of the plaintiff set out the transfer of the bond by Moreland to Morrison, and the amount due on it, &c. &c.; but omitted to give the date of the bond, and was in other respects rather deficient in form. No objection, however, was taken in the court below to this narr., nor was any of the evidence objected to, because not applicable to the plaintiff’s declaration; but after a tedious trial on the merits, this court is asked to set aside the whole, and send the parties to begin anew, on account of the alleged defect of this declaration. Our act of 1806 provides, that even during the trial a declaration may be amended, on certain conditions and under certain restrictions. This act does not, however, repeal any of the statutes of jeofails, or make- the omission to amend error, or prevent a verdict from curing whatever was cured by a verdict before the passing of the act. It has, however, perhaps, introduced a practice, totally inconsistent with the spirit and intention which actuated the legislature of the state who enacted it. The defendant carefully avoids objecting to any defect in the declaration in the Court of Common Pleas; for he knows the plaintiff would be permitted to, and would amend. After taking his chance with the jury, he does not move in arrest of judgment, but he takes his writ of error, and asks this court to reverse, in direct opposition to the whole spirit of the law; and, in my opinion, to what ought to be and is the object of courts of justice,—which is, to hear the matter in dispute, and do justice between the parties. This law has been spoken of as tending to destroy all form in legal proceedings. If it has this effect, it is not the fault of the law; for whenever the defendant objects to the narr., or the plaintiff to the plea, the one or the other must be amended; and, if the amendment is a surprise on the other party, and occasions the cause to be continued a term, the amendment is on paying costs of that term at least. It is then always in the power of the party to compel his opponent to make his narr. or his plea formal. If he will not do so at the proper time, if he will take his chance on the merits, he must not complain that this court will overlook many a matter which might have availed the party in one stage of the cause. We do not say that the declaration was good, but as it does state a cause of action, it is made good by the defendant’s omission to object to it, and by the verdict of the jury.
The second error assigned was not relied on.
*63 The third, fourth, and sixth errors were argued- as one.
After the plaintiff had proved his case, the defendant proved certain payments made to the plaintiff, or for him and by his direction before this suit instituted: and then offered to prove, that the defendant was bail in a note with y^e^defendant, and had been sued and judgment obtained, and exa»«o#rtion issued; and that, on this the defendant had paid money for the defendant, since this suit was brought. The Court of Common Pleas, believing that a payment since this suit was instituted was not a set-off, refused to admit the evidence of such payment. The defendant then attempted to prove, that although the payment was actually made after suit brought, yet the defendant had assumed the debt, and promised to pay it, and was, accepted as payer before suit. He also undertook to prove that his goods were levied on for that debt before this suit was brought, and insisted that such levy was in law a payment and satisfaction of the debt, and entitled him to set it off.
Generally a debt must be due and demandable at the time suit is brought, or-such debt cannot be set off. The party who offers to set it off, must show that he had a right of action against the plaintiff for the sum he offers to set off; and I do not recollect any case in which a debt not due at the time of suit brought, can be set off, unless perhaps the case of a special agreement of the plaintiff that it shall be allowed as a set-off; as, where a plaintiff, having brought suit, tells the defendant to take up a note in the hands of, or to pay a debt to, a third person, and that it shall be allowed as a set-off in the suit brought. In which case our courts would, under their equitable jurisdiction, admit it. There was not, however, any proof of such an agreement, either previous or subsequent to the payment of this money by Morrison.
As to the effect of the levy on his goods under the circumstances, and the act of assembly in this state, it will not avail Morrison.
By our law, a levy by a constable continues a lien only twenty days after the return of execution. Besides, in this case, the levy was never completed. The constable did, it is true, levy on and advertise the goods of Morrison; but, before the day of sale, the plaintiff in the suit in writing directed him to release them, and agreed to wait five months longer for his debt, and this was done at the urgent and reiterated request of Morrison and his friends. The property then was restored to Morrison free from the levy; he could dispose of it the next day. The return of the constable showed that it was not considered as levied on; and the man who thus by solicitation procures indulgence, comes with a bad grace to insist that he has paid a debt. There was then no error in the court below, in these bills.
The fifth and seventh errors related to an account made out all at one time on a loose sheet of paper, on which were set down charges of money paid, and goods'delivered, &c. to Moreland by *64 Morrison. The court refused to let this go to the jury. It was then insisted, that as some of the items were proved by witnesses, that this paper should go to the jury, as containing a statement, and for the purpose of.a memorandum of the dates and amount of the items proved. If it had contained no items, except those of which the defendant had given proof, this might have been so; but as the items of which there was no proof were also on the paper, and as giving these to the jury could answer no good purpose, the court were right in rejecting this paper. But the court were requested to file in writing their reasons for rejecting this paper. Our act of assembly, requiring the court to file opinions may seem to include such a case; but neither its spirit nor the construction heretofore put on it would seem to bring this case within it. After the testimony is concluded, and the cause is argued, and it is seen that the cause depends on the application of certain principles of law, it may be and is important that those principles should be stated correctly, and that the parties may know precisely how they were stated, and how applied to the cause trying. But on a question of the admissibility of evidence, the material matter is, was it rightly admitted, or rightly rejected, and the reasons have not in practice been included in the bill of exceptions, nor do I see that it would conduce to any good end to insert them: it would delay trials, swell records, and increase trouble and labour, for no useful purpose.
The defendant, Morrison, called his son and daughter to prove certain charges against Morelandsuch as keeping cattle, horses, and sheep. These witnesses, on their cross-examination, said their father did not work the horses, or get the wool from the sheep, did not get harrow teeth, &c. from Moreland. The plaintifij in conclusion, called on the witnesses to prove that he did get the wool, did get the harrow teeth. This testimony was objected to, and formed the subject of other bills of exceptions. It was rightly admitted; for when Morrison offered the price of keeping the horses and sheep as a set-off to the plaintiff’s demand, it was competent for the plaintiff to prove, that he was paid for so doing at the time; and, further, it was competent as directly contradicting Morrison’s witnesses, and going to destroy the whole effect of their testimony.
Upon the whole, the judgment of the court below is affirmed.
Judgment affirmed.